The Honorable Judge of the United States Court of Appeals for the Fourth Circuit. Please be seated. The new claim conclusion was so interesting. Mr. Byrne. Good morning, Your Honors. May it please the Court, my name is Jonathan Byrne. I'm an Assistant Federal Public Defender and I'm here on behalf of the defendant below, Cody Wroblewski. This case is about several conditions of supervised release that were imposed on Mr. Wroblewski after his conviction for failing to register as a sex offender. Those conditions are overbroad. They are a greater deprivation on liberty than necessary to advance the purposes of supervised release and there's no basis in the record to support their imposition. I specifically want to focus on what we've labeled the explicit materials condition and the computer condition. The explicit material condition prohibits Mr. Wroblewski from accessing or possessing any material depicting sexually explicit conduct or knowingly entering or remaining in any location where those materials could be accessed without the permission of his probation officer. That condition is extremely broad and courts that have dealt with similar conditions using terminology like pornography or sexually stimulating or sexually oriented material have recognized that they impinge on First Amendment rights and have to be given a lot of scrutiny in the context of supervised release conditions. So as a starting point, why don't you agree with the idea that the judge's limitation, right, she expressly said that this would not apply to sort of the mainstream popular media, right? So your example is Game of Thrones. The judge in issuing the order says it does not apply to that type of mainstream explicit material. Why don't we just view that as binding? Well, Your Honor, if this court would read the condition that way, that would certainly be an improvement. But I don't know that the district court's ruling was that definitive. What the district court said was it had not seen any probation or supervised release violations based on that kind of material and said that based on that it doesn't cover that. But the court also rejected it. Your Honor, it doesn't apply to mainstream media. I could be wrong about the exact term, but I think that's the point Judge Richards is making. She says, I do not find that this encompasses popular mainstream media. If the court agrees that that is the condition as it is imposed, then we wouldn't have a problem with that, although it is still unclear what mainstream means. And also the district court rejected our modification to make it only cover obscenity and child pornography. Obviously, child pornography is illegal for anyone to possess, and obscenity is a more clearly defined category that has lessened First Amendment issues. Those are two different things. I'm not sure it's more clearly defined than the statute. The statute, for vagueness purposes, the federal statute seems much clearer than the term obscenity. If you can tell me what clearly that means, you're better than most. But there's a separate question of whether it's overbroad. But for vagueness purposes, the clarity, the statute that's listed here seems much clearer than the broad term obscenity. It is clearer than the term obscenity, but also in reading it that way it's so overbroad that it causes all sorts of First Amendment problems because the reference to the definition of sexually explicit conduct in the federal code includes basically a whole bunch of acts that, aside from one, and that's only in some jurisdictions, are per se illegal. And so if that's the restriction that's going to be read on it, it's still too broad in its application, unless it gets confined to something that the district court did not explicitly put in the conditions as they are listed in the J&C. But you agree that under our precedent, where there's a conflict between the oral pronouncement and the written order, the oral pronouncement governs, right? Yes, Your Honor. And so if we find that the oral pronouncement, as we described, does not include mainstream media, then that would govern, regardless of what we said, just to a court below, they would look at that oral pronouncement first, right? I think the court, when it gets time to apply that, would. I'm not sure the probation officer would in the first instance because the condition as written does not include that limitation. And so I'm afraid you might have a situation where the probation officer could seek a revocation petition, perhaps have the defendant be arrested and spend time in jail before, with counsel and with the court, being able to sort it out and say, well, this isn't mainstream media. This is not what Judge Berger intended this condition to cover. Yes, Your Honor. Did you finish? Yes, Your Honor. Okay. Speaking of the question of where, a situation where oral pronouncements vary from written pronouncements or written sentence, I was looking on page 49 of the Joint Appendix when she's talking about the sexually explicit material, and she says, this is a standard condition for sex offenders, and I find that a condition barring this defendant from viewing pornographic material as related to the conviction is necessary and appropriate. But the written doesn't say pornographic material. So is this a situation where we should limit her, the condition, to pornographic material? I don't think. As opposed to the much more broader statement that she made in her written order. I don't think limiting it to pornographic solves the First Amendment issue. It may not. It may not. My question is, what is it we're judging? Are we judging the limitation as to pornographic material, or are we looking at the much broader statement that she made later on in her written sentence? Well, I think that's part of the issue. I think the written has to control. Written controls over what? I'm sorry. The oral pronouncement has to control. But now we're evaluating it in terms of this person being restricted from viewing pornographic material. Correct. Although, even in that, again, you get to the problem of the conditions as written that he's going to get a copy of when he begins his term of supervised release is not going to include any limitation that Judge Berger put on it during her oral ruling because it's not in the J&C. But the other way of reading that is on J47, when she gives the full description that later is found in the written order describing material depicting sexually explicit conduct as defined by, and it's a long description, couldn't we also read on page 49 where she finds that viewing pornographic material is simply a shorthand for the 57 words that she previously described? I think it could be read that way. I don't know that's necessarily the clearest reading since she used the different terminologies. And, again, we have the problem that it conflicts with the written judgment and the written condition that was originally proposed, which I think is one reason, if nothing else, these all need to be harmonized so we know exactly what it is that Mr. Rebluski is prohibited from doing when he begins his term of supervised release. If I could move on to the computer condition very quickly. Before you leave that, I'm just going to ask you a question I'm curious about. I'm the district judge. I've got a defendant in front of me who has committed a sexual offense, sexual offense against a minor, and I want to put limitations on his ability to view, see, read, whatever, sexually explicit material that might aggravate the situation or encourage him to commit other crimes. How do I know what does that? How do I know what to restrict him from seeing or using or watching or reading about? Well, I think ultimately, Your Honor, the burden for supporting conditions of supervised release is on the government. And so it's the government's responsibility to provide evidence to support the imposition of any particular condition. I think this is a problem that is bound up with this idea that the district court administratively has adopted all of these standard conditions of sex offenses because what is happening is what happens in this case. The probation officer says these are standard conditions. They all apply. And then we start arguing about whether they should or shouldn't, and it's not a situation where the government comes in from the get-go and says we need to impose Condition A, Condition B, Condition C, and this is why. But by calling them standard conditions, that does not mean they're required in every case, right? Because here the district judge rejected two of them. She did, Your Honor, and I'd argue that calling them standard completely misconstrues what they actually are. They're special conditions. Couldn't we just view them as things to remember, things to look at in each of these type cases? They could be recommended or they could be a potential list of things that could apply, but they are treated in many respects as being what they claim to be, which is standard, but not here. Because she went over each one of them individually where there was an objection. So they're not standard in the sense that they're going to be automatically applied in every case. She did, but as one of Your Honors, when you were quoting her ruling on the explicit materials condition, said it is a standard condition. So it's implicit that one of the basis for imposing it is that it's a standard condition. And particularly that's evident in the probation officer's characterization because in the objections to the PSR, we described one of them as optional and were scolded by the probation officer that they know they're actually standard. Moving on to the computer condition. That one in particular, it's also overbroad and has some similar problems as the explicit materials condition, but the computer condition particularly, there just is no basis in the record for imposing it in this case. Mr. Rebluski's original conviction, which was in South Carolina, didn't involve the Internet, didn't involve child pornography. It isn't a situation where he lured a minor into a particular act. It's not a situation where he was communicating with a minor or someone he thought was a minor online. Likewise, the SORNA violation, that is his current conviction for which this sentence is imposed, no evidence that a computer had anything to do with that, no child pornography was found, nothing like that. So in situations like this, other courts have looked at these conditions and said there has to be some basis for it. And particularly the two cases that we filed, the 28 J letters about Helena and Eaglin, are basically the same situation where there is no computer involved in the offenses of conviction, and therefore this broad condition that would keep him from having a cell phone, much less a computer, which is pretty much impossible in 2019, it was an abuse of discretion for the court to impose that. Finally, the contact conditions that we talked about, those are similarly overbroad, particularly the one that requires that in order to have any association with minors, Mr. Wroblewski, it has to be in the presence of a parent or guardian with notification to a parent or guardian of his sex offense and requires written approval from the probation officer. You agree that the judge was entitled to take into account the actual underlying conduct here in South Carolina, deciding whether that was necessary. Yes, Your Honor. The contact provisions have a much better grounding in the record in terms of their need, but they're still overbroad. In that situation particularly, having to tick off all three of those requirements before having any association with a minor, including his own children, is a particular issue. You skipped over your first argument about the procedural problems with the imposition of the sentence out of the defendant's presence. I'm very happy to go back to that, Your Honor. Yes, because we talked about written versus oral pronouncements. In this case, the judge, with respect to the computer conditions, after hearing arguments from the parties, said, I'm going to think this over, take it under advisement, never returned to it during the sentencing hearing, and then the condition was imposed a month later in the written J&C. I disagree with the government that this is a plain error situation because there would have been no... I don't mean you personally, but the defendant did not object when she said she was going to take it under advisement, right? That's correct. And didn't object when the J&C came out. It didn't stop the court from doing it, didn't ask to be back. I mean, in all the various opportunities that the defendant had to complain, he didn't do it there, which makes sense to me, frankly, because I would think, as a defendant, you would appreciate a district judge being thoughtful enough to say, listen, this is a really hard question. I want to go spend some time thinking about it, researching it, and trying to reach an answer. That seems like a reasonable decision for a defendant to make, but having made that decision, I don't see how we don't review it for plain error. Well, I think, Your Honor, there was no... I don't know that there is an objection to make to the court deciding to take something under advisement, and you're correct. We obviously want the court to make a thoughtful decision about it. Once the term shows up in the J&C, there really is no means to object to it. There's not a... Rule 35 restricts motions to correct sentence to essentially arithmetic, mathematical errors. Or other clear error. Yes, Your Honor, I don't think that would... You don't think it's clear? I don't think it would be clear, Your Honor, no, particularly because there's no explanation in the J&C, or there's no written opinion that says why that condition was imposed. But you're arguing to us it was plain error, but it wasn't clear. No, Your Honor, I'd argue that it was error, period. We don't agree with the government that it's plain error. We don't have the authority just to simply... I'm sorry. Go ahead. I'm sorry. We don't have the authority simply to remand for resentencing and just do it over in his presence. I think the cases that we've cited in our brief show that what this court should do is send it back to have the written judgment concur with the judgment that was pronounced in his presence. And, of course, it being a condition... But nothing was expressed. I'm sorry? Nothing was expressed orally. Well, exactly. The condition was not imposed at sentencing, and therefore it would have to be struck from the J&C. It could, of course, being a supervised release condition, it could be imposed at a modification. I think we understand. Thank you, Your Honor. May it please the Court, Stephen Hasselblad on behalf of the United States, arguing that this Court should affirm the conditions of supervised release imposed on defendant and appellant Cody Wroblowski. Those conditions of supervised release were legal, they were reasonable, and the Court did not plainly err or abuse its discretion in imposing them. With the Court's permission, I'll start with that Rule 43 issue. First of all, it should be reviewed under the plain error standard. The Court announced very openly that it would be taking the party's arguments as to the computer condition of supervised release under advisement. The defendant right then had a chance to object. At the end of the sentencing hearing, most importantly, when it became clear that the Court was not going to be ruling on it during that sentencing hearing, the Court twice asked both parties, do you have any other objections to make, anything else you want to put on the record? The defendant didn't make an objection there either. Given that lack of objection, the plain error standard should apply. But he can say, you know, I'm glad you're taking it under advisement and expect to be brought back into court when a decision is made and that part of the sentence imposed. I mean, the fact that he doesn't object, nobody in their right mind would object to a judge taking something under consideration. Your Honor, I think in the context of the fact of the Court's wording when the District Court originally stated that she was going to take it under advisement was I need more time for consideration on that. And then at the end, it was clear the sentencing hearing was going to end. There wasn't, you know, the District Court wasn't discussing scheduling another date to come back in to impose that sentence. I think given the context, it would have been clear to the defendant that it was highly likely at the very least that this would be imposed or not imposed in the written judgment. And if that is so, how do we evaluate with all the different parts of a sentence? You could be sentenced to death. You could be sentenced to probation. I mean, where in that continuum do we draw the line as to what you have to bring the defendant back into court for when you impose part of a sentence? Your Honor, the government acknowledges there is an error here. The defendant should have been brought back in. Okay, so you agree he should have been brought in. Yes, yes, Your Honor. We agree the defendant should have been brought back in in this case. All right, so where do we draw the line as to whether or not that's plain error or not? Your Honor, the government also concedes that the error is clear. The second prong of the plain error standard has also occurred in this case. What the government argues is that the defendant hasn't met its burden on the third and fourth prongs of plain error review. That is, that error did not affect the defendant's substantial rights, nor did the error call into question the fairness or integrity of the judicial proceeding. As to substantial rights, I think... Because of what? I mean, what if it was a death sentence? What if it was 50 years? I mean, where do you draw the line? How do we draw the line? So I think it's prejudice, and I think what we can do is look at the record here and the question that the court needs to look at under a lot of Fourth Circuit cases. United States v. Roll is one of the good cases cited in our 28J letter. Regarding this, for a Rule 43 error, what the defendant has to show is that the defendant's absence created some sort of meaningful difference in the outcome of the hearing. Here, there's no... The defendant bears the burden here, and there's no evidence in the record that anything would have been different had the defendant been brought back into the courtroom to hear the sentence, or if the court had made a snap decision. All right, what if the judge said an additional 25 years? I'm going to give you additional... This is in another case, in a hypothetical. I can't decide what to give you for this count, too. And so later on, I'm going to let... I decide to give you 25 years. Now, what's the difference? I... Would you say that the amount of time has no bearing on the decision? Yes, Your Honor. I would say the sentence itself doesn't have a bearing as long as it's the same as what happened here. Okay, so he could give... In your opinion, the judge could say, I don't want to think about count two. Besides, later on, I'm going to give him 25 years. I can just write that down, mail it to him, and he has no grounds to complain. Your Honor, I don't think he would have been... I don't think he would have been prejudiced, as long as it's the same as here, where that 25-year sentence had been discussed and argued at length by the parties. Here, the computer condition was... It's over about six pages of transcript. Both parties made lengthy arguments about the appropriateness of that computer condition. Okay, I'm making you spend too much time on this. You can go on to your next argument. I understand your position. Before you go, even if we disagree with you on the plain error point, you also argue that it would be harmless even if it was properly preserved or need not be preserved in any way, and the same sort of reasons apply in that context. Yes, Your Honor. Your Honor, moving to the explicit materials condition, this condition is not overbroad for at least three reasons. First of all, vagueness and overbreath are separate questions technically, but a lot of the decisions that the defendant cites and the courts typically make, those questions are intertwined. Here, the statute is not vague, and it's because it references 2256-2A. That statute, two different circuits have found, is not vague, and the Supreme Court upheld a very, very similar New York State statute in the context of child pornography, saying that that wasn't overbroad, the 2256 statute. So the vagueness issue just isn't present here as it is in other cases. Second, this condition of supervised release is limited to visual depictions, and I think that's a very important distinction. A lot of other cases had concerns about, would the defendant be able to read the Bible, for example? Tell me how that makes a difference, that you can't look at it, but you can read it and listen to it. Your Honor, I think it becomes much narrower given the concern. I think that, without a doubt, it's narrower. As far as function is concerned, what difference does it make with regard to restriction? Because the number of materials are definitely narrow. For example, the Bible. The defendant quotes several cases, and several courts have expressed concern that works in the Western literary canon, or any canon, that had something to do with nudity or alluded to sexual activity or something like that, would be out of bounds under the condition of supervised release. That's not the case here because it's only visual depictions. So again, it's much narrower than a lot of the conditions that have been struck down in other cases. Go ahead. Do you agree that we and any court in the future reading the oral pronouncement would say that this provision does not include mainstream media? Yes, Your Honor. And that everybody would understand that and the government concedes it at this point? Yes, Your Honor. The third reason, Your Honor, that it's narrower, it is not overbroad, is that there is a provision for probation officer exemption for entering places where these materials may be available. So to the extent, and again, I don't think it encompasses mainstream media, but to the extent the defendant had some fear that entering a normal public place may put him in violation of this condition, the defendant could always get permission from the probation officer to do so. How do I know what mainstream media is other than you telling me you know it when you see it? Your Honor, I think one of the ways to do it, one of the ways it's clear in this case is that the court not only said mainstream media, but it was in response to examples by the defendant. And I think Game of Thrones was one example, and there are a couple of other examples of mainstream programs that may have some of these materials in them. So I think that that clarified if there was any ambiguity in the term mainstream media. This case is somewhat like another case in the Fourth Circuit, United States v. Endress, where the court, it was an unpublished case, but the court said that these conditions of supervised release should be read in a common-sense way in the context of the underlying facts of the case. In that case, it was a mentally ill defendant who had some sort of obsession with soldiers of fortune and had acquired a weapon. And the condition of supervised release prevented the defendant from obtaining materials involving violence, which could be read very broadly. The court, though, said that it always should be read in light of the underlying facts of the case. And there you could understand what violence meant because of this obsession with soldiers of fortune. Here, similarly, I think we can read this condition of supervised release in light of the underlying facts of the case. Already, before the court even said mainstream media, exclude mainstream media from what's covered here. But given that exclusion, that express exclusion of mainstream media, I think it's clear the types of materials that are excluded here. If we could move to the computer issue. Yes. Hypothetically, and I understand this is not the scenario. Understood, Your Honor. If the local rules provided that this computer limitation must be imposed on any defendant convicted of a sexual offense, unlike this case, but if it said it must be, do you agree that that would be improper, impermissible? Yes, Your Honor. Good. So what about this case, then, is different from that? So how do we know, what do we see that was sort of individualized to this particular defendant that wouldn't apply to every other defendant convicted of a sexual offense? Your Honor, I think when we look at the record, what we can see is that the court took the underlying, not the SORNA offense, but the underlying offense very seriously. And that wasn't sort of a run-of-the-mill offense. It was a sexual assault while the defendant was 24 years old of a five-year-old. The PSR laid out the details, and from the PSR it appears that that sexual offense against the five, sexual assault, occurred many times. So very serious underlying offense. And what the court repeatedly went back to is the defendant, in the court's words, had showed a disrespect for the law by failing to register twice under SORNA and moving between states and failing to register. So I think the first thing we look at is this court was very concerned with that original underlying offense and then the defendant's quote-unquote disrespect for the law. And in the written reasons for the judgment, the court marked protection of the public as one of the reasons for that condition of supervised release. And also said that heightened conditions were necessary for monitoring the adjustment of the defendant. And I think what we see here with that computer condition is it's, again, not as broad as computer conditions in other cases that have been struck down because there is, again, a probation officer exemption for work-related purposes, for if a family member has a computer, or for other legitimate purposes, the court says. And so I think what we can see from the record is that the court was very concerned with the underlying offense and also wanted heightened monitoring because the defendant had failed to register under SORNA repeatedly in the past. Can I ask one question about this provision? It seems like maybe there's a missing semicolon, and I want to make sure the government's position on this is relatively clear. When I read the provision where it describes that they may not possess, with the exception of these reasons, such purposes as employment opportunities and the like, the last clause there is used by a family member living in the defendant's same household or for other legitimate purposes. The other legitimate purposes, is that limited to family members, or would that include him as well? So in other words, should there be a semicolon before the or? I read it as if there was a sentence. I have always read that as if there was a semicolon before the or, and it would apply generally to other legitimate purposes with work-related, essentially rehabilitation-related things being permissible. So the probation officer can approve the use of a computer for any legitimate purpose as it is seen. That's how I read that provision, Your Honor. Are you familiar? My question has to do with the limitation on computer use. Yes, Your Honor. Are you familiar with the Packingham case that came out of the Supreme Court? Yes, Your Honor. And you're familiar with the statements they made about how important the Internet is and computer usage is to the average citizen, not only to gain employment, but to keep up with the news, to participate in public discussions and things like that. Yes, Your Honor. You know, given the view that the Supreme Court has expressed about the importance of the Internet, which of course came out after Judge Berger had imposed her sentence, do you have any concerns about whether or not the Court in this situation can be as broad in its limitations with regard to the use of the Internet and computers as you might have thought at the original sentence? Your Honor, I think this condition of supervised release is permissible because of that probation officer exemption provision. I think it would be a different question if it was a broad blanket, cannot use a computer, cannot use the Internet for the entire period of supervised release. Because this condition allows for the probation officer exemption, I think that meets the concerns that the Supreme Court expressed in Packingham. All right, how about be the probation officer now and tell me as a defendant what I can do and what I can't do on the Internet, what I can watch and what I can't watch? I may not understand the question, Your Honor. Let's presume in this case you're the probation officer and I'm the defendant. And I say, okay, I've got this limitation on me. I can't use the Internet without your permission. So tell me what I can do, what I can watch and what I can read and what I can't. You be the probation officer. Well, Your Honor, I think as I read it, it would be the defendant coming to the probation officer and offering a legitimate purpose for the use of the Internet or a computer. So every time the defendant needs to go and ask his probation officer, can I read the New York Times? And does he need to come back later and say, can I read Time magazine? Your Honor, I think it would apply in a more blanket way or it could. Nothing in this would prevent it from applying in a more blanket way. You say the difficulty you're having is the problem the defendant anticipates is that these rules are so broad that even saying that the probation officer will give you guidance, you see how hard it is to try to explain to somebody what they can watch and what they can't watch. Yes, Your Honor, I do think it would be difficult. But again, the requirement under 3583 isn't perfectly tailored. That's not the requirement. It's no broader than reasonably necessary. And I think in light of the underlying offense here, in light of the fact that this is narrow enough to include that probation officer exemption, I don't think the court abused its discretion by imposing this condition. I do agree that there will be some burden on the defendant because of this, but to some extent it's by design because the court believed the defendant needed additional monitoring due to his failure to register in two states and due to the very serious nature of that underlying offense. But when you have a condition that impinges on constitutional rights, not just general limitations, but impinges on constitutional rights, such as your First Amendment right to receive and access information, then the burden, I'm not sure, is fair to put it on the defendant to come and try to give you specific examples. I think when the government puts a limitation on constitutional rights, then perhaps the burden ought to be on the government to be explicit and to narrowly tailor its restrictions so that the imposition on the constitutional right is minimal. Your Honor, I do think that this is as minimal as reasonably necessary under the circumstances here. Given, again, it wasn't abusive discretion for the district court here to find that the defendant needed that extra monitoring due to the seriousness of the underlying offense and the failure to register. I don't disagree with the general need to impose restrictions. There's no doubt about that. We have to protect our children, society, our families. The question is, though, is this limitation appropriate under these circumstances? Or is it too great an imposition on your constitutional rights? Your Honor, I think it is appropriate under the circumstances. Again, we are looking at an abusive discretion standard based on the court's feeling and the defendant's own acknowledgement of the serious nature of the underlying offense, the need to protect the public from this defendant, and the need for additional monitoring because the defendant failed to register. Didn't Packingham also expressly sort of carve out this idea? You know, that was a state statute prohibiting visiting social media sites. But the court seemed to sort of say this would be different if this was a limitation on supervision. Yes, Your Honor. Right? And so the point of Packingham is when the statute extends beyond the supervision period, when we know we can constrict somebody's and that's where we got a problem in Packingham, it sort of excludes the example we've got before us, right? Yes, Your Honor, that's how I read Packingham. Doesn't mean the principle doesn't apply, but it does sort of carve that particular issue out. Agreed, Your Honor. I want to switch gears on you a little bit. I still want to talk about the limitation on computer use. Yes, Your Honor. Any limitation or restriction that's put in a suit as a term of supervisory lease  I think Congress has said that explicitly. When I go to the guidelines and I look at restrictions suggested with regard to sex offenses under 5D1.3D7, I don't expect you to know that. I'm going to read it to you. One of the things is there could be a condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items. So where a defendant has used a computer in the commission of a crime, such as accessing child pornography, clearly a restriction is appropriate on computer usage. But in this case, there is no allegation of use of a computer. So why is this restriction not conflicting with the policy statement? Your Honor, I think actually the Fourth Circuit case that came out in the last couple of weeks, United States v. Hawley, that dealt with the Expresio, I'm not a Latin scholar, Expresio Unionist. No, I don't know what it, I know what you're talking about, but I can't say it. So I think in the, as I read that provision of the guidelines, those are suggestions for conditions of supervised release. And the guidelines there very clearly say that if defendant's previous conduct involved use of a computer, then this condition is absolutely appropriate. But I don't read that guideline to say it's not appropriate in some circumstances where the defendant had not used a computer as a part of the underlying offense. And I think there's even a prefatory statement to that section of the guidelines that although it doesn't expressly say that these are only examples, indicates that these are sort of broad conditions that courts can deviate from as necessary. Would you agree that the crime that he's being sentenced for, which is a SORNA violation, is not a sex offense? Yes, Your Honor. So even in sex offenses, the limitation to that, which this SORNA is not, they indicate a preference that any restriction on the use of computers be for people who have used a computer in the commission of their crime. Your Honor, I see my time is up. Please. So, Your Honor, I think the court here was looking at the underlying offense as much as the SORNA offense, and that was a sex offense. And again, I read that part of the guidelines to not... It doesn't say that the computer condition cannot be imposed on sexual offenders who have not used a computer. It only recommends it definitely in the case where a sexual offense has involved a computer. Thank you. Thank you, Your Honor. Your Honor, I just wanted to hit a couple of points that came up during my colleague's presentation. On the issue of plain error and objecting to the computer condition not being imposed, the district court never said, I'm not going to bring you all back to finish this sentencing here. And it would be extremely unlikely for something like that to happen without the judge coming back and reconvening everyone and completing the sentence. Well, in our law, if you're going to object to a condition of supervised release, you have to do it when it's imposed. And here, it never was imposed. It has to be... Yes, you have to object at sentencing, which we did. Right. And you have to object when the... You can't wait till later after your own supervised release to object to the imposition of a term at sentencing. If you're going to object, you have to object when that term is imposed on you. But here, the term was never imposed on him because she took it under advisement. And I guess unless you say it was imposed after you were out of court, then I don't know how you object to it when it's imposed after you're out of court. Well, we objected to it because it was recommended in the PSR. So I think that preserves the issue of the condition itself. But you weren't able to object as to when it was imposed and the fact it was imposed not in a court. That's true, Your Honor. Talking about the explicit materials condition, someone brought up with my colleague the idea of what constitutes mainstream if you're talking about mainstream media. The example we used in our brief, Game of Thrones is an easy one because it's very popular. It's critically lauded. It's a big deal. But for TV shows that have one season and nobody hears from them again or direct-to-DVD movies that three people saw, are those not going to be mainstream? And how can a probationer or a supervisee know ahead of time what it is that he can and can't view? And I also think with regards to that condition, Judge Traxler, what you brought up about that it covers visual depictions but not books, it may narrow it, but to me it undermines the whole point of the condition because there's this idea floated by the government at sentencing without any evidence to back it up about the need to control his fantasy sex life of sex offenders. What do you do if you're reading a book and it's got a picture in it? Are you supposed to close your eyes when it comes to the picture? How are you going to know you can't look at it if you don't look at it? Or as my co-counsel said, what if you're reading it on a iPad? But regardless, if the issue is someone's fantasy sex life, that goes on just as easily if you're reading a book as if you're watching something. But the challenge there is to violate supervised release provisions, it has to be a knowing violation. Actually, Your Honor, that condition does not require. There's no mens rea for the actual consumption of sexually explicit material. The provision for... If he just happens to be in a taxi cab going through Times Square and the billboard flashes something up, your view is that would be a violation? I don't know if that one necessarily would be because the presence part of that condition does require him to knowingly remain there. But if he was at someone's home at a friend's house and they put something on and he consumed it right there, technically that would be a violation. Yeah, but what you're saying is if he sees it and he tells the cab driver, let me out here, he can't do that. He's got to keep going. If he was in the middle of old Times Square, let me out here probably wouldn't help. On the issue of permission from the probation officer, on the explicit materials condition, that permission applies only to locations, going somewhere. There is no exception for materials themselves. And for the computer condition, the only thing that is specifically addressed there is employment. It doesn't even mention education. And again, you may be able to read some of the later language of that to allow that. But again, that gets into the vagueness of the condition inherently. And before I finish up, in terms of the vagueness and knowing what the supervisee is allowed to do and not allowed to do, I direct this court to the discussion in our brief of Stevens, which is the Supreme Court case that involved crush videos. And the government repeatedly in their argument to the Supreme Court said, trust us, we're only going to use this law to go after people who are doing completely heinous things. It's not going to trip up on First Amendment material. And the Supreme Court says, that's not good enough. When the First Amendment's involved, we can't rely on the prosecutors, or in this case, the probation office, to get it right. Thank you, Your Honor. Thank you, Counsel. We'll come down and agree counsel, and we're done for the day. This honorable court stays adjourned. And with that, I thank the honorable case and this honorable court.
judges: Julius N. Richardson, William B. Traxler Jr., Joseph F. Anderson Jr.